Phillips, J. (orally).
Tbis is an action to restrain the railroad company from building five additional tracks across Clark avenue, upon which avenue the plaintiff has a tract of land abutting, with a furnace on it, and perhaps some other improvements, and is conducting thereon a considerable business.
Clark avenue, at the east end of it, terminates at the river, where it has no outlet. And I should judge from the evidence, that for a considerable distance from the river, westward, it has no intersecting street or avenue, so that the .east end of Clark avenue is a cul de sac; and on this cul de sac the plaintiff’s property abuts. Between the plaintiff’s property and the first intersecting *427 highway to the west, the defendant railroad company is^ about to construct five railroad tracks, in addition to the two that it has already in operation across the avenue at that point.
The plaintiff seeks to restrain the railroad company from putting down these five additional tracks, it having obtained a grant from the city authorizing it to construct them, until it shall have obtained the right by appropriation proceeding, or made compensation to the plaintiff.
It is the settled law of this state, that the owner of land abutting upon a public street has an easement in the street in front of his premises, as a means of ingress and egress to and from his property; and.that such easement is a property right, inviolate under the Constitution, until compensation shall be made to the owner.
The plaintiff seeks to maintain this action upon the theory, that where lands abut upon a public street that is a cul de sac, this property right extends to all that part of such street lying between such lands and the first connecting thoroughfare. Is this theory tenable in law ?
This property right of an abutting land owner does not rest upon the theory that there is anything sacred in that part of the street upon which his land abuts. It rests upon the broad-principle that the right of property is not limited to the tangible subject-matter of it, but includes the right of user and enjoyment of the tangible thing. It takes this- to complete the orbit of the property right. This is why one may be injured in his property right, without physical injury to the tangible subject thereof. Upon this principle, a grant of land surrounded by other lands of the grantor, carries with it a right-of-way over the surrounding lands; for without such appurtenant right the grantee could not use and enjoy his estate.
A street may be entirely free from obstruction immediately in front of one’s premises, but entirely obstructed at both sides thereof. In such case, the owner would have free passage to and from that part of the street bounding his property, but he would not have access to his property; and this is what he is entitled to as part of his property right. I read from O’Brien v. Iron & Steel Co., 158 Ind., 218, reading from the opinion:
*428 “This complaint alleges that the defendants have erected a permanent building across Church street, about two hundred feet east of the plaintiff’s residence, thereby effectually barring all passage in that direction and have thus cut off the plaintiffs from their usual and only way of direct travel to and from the east and business portion of the city, and have thus imposed upon them great trouble and inconvenience in getting to and from their property, by reason whereof their property has been depreciated from $1,200 to $600. These facts show that the. wrongful act of appellees has not only deprived appellants of their common right to use a regularly dedicated, improved and traveled street in front of their property, but it has placed that property in a cul de sac, with the base in the direction of the business and most frequented part of the city, thus making it necessary in going to market, or to the eastern part of the town, to travel in the opposite direction to the first cross street.
‘ ‘ If appellees may close this street on the e.ast within the same .square, without special injury to appellants, why may they not also close it on the west within the same square, and completely fence appellants in and render valueless their property without special injury? Surely the injury would be the same in kind. In such ease it seems absurd to say that the injuries sustained by appellants in their property rights would be the same, but only greater in degree, as that sustained by the community in general. We have a class of cases which hold that when an obstruction does not exclude the abutter from ingress and egress, but only imposes upon him in common with other travelers, that inconvenience which results from a more circuitous way, his injury is in common, for which there can be no recovery; as for instance, if the obstruction in this case had been placed east of an intersecting cross street, then it could not be said that appellants were excluded from approaching or leaving their premises in any direction originally afforded by the street.”
I read from Tilly v. Mitchell & Lewis Co., 121 Wis., 1:
‘ ‘ The phrase used in the foregoing quotation ‘ individuals who in their persons or estate suffer great damage,’ comes perhaps as near being a satisfactory expression of the principle as any that has been used. As before indicated, a person whose lot abuts upon the particular piece of street which is unlawfully closed or obstructed is universally held to be specially and peculiarly injured, though he may have other access to his lot. But many cases draw an arbitrary line at this point and maintain *429 that when the plaintiff’s lot fronts upon another part of the street, no such injury is shown. Certainly the distinction is illogical. The man whose lot fronts upon the next block may be fully as deeply injured in the decreased value rentability and desirability of his lot as the man whose lot fronts on the block which is closed. One may suffer as great damage in his estate as the other. True, there may be many such indiyidual owners, but that can not affect individual rights.”
And I read from Madden v. Railway, 21 C. C., 73, 78:
“But it is said that these properties do not abut upon this particular part of the street; do not abut on this way, and the claim is made broadly that the property owner has only these property rights in that part of the street that would be included between or within his lot lines éxtended across the street.
“To say that a man who buys a lot, where the owner of the property has platted and laid out streets and alleys, on: the faith of the ability to get to and from his lot by the streets' as laid out upon the plat, can be deprived of all of that right, and simply be allowed to go from his lot to that part of the street immediately in front of him, is to say that his right in the street is a nullity. The right of ingress or egress to and from the bed of the street "that is immediately in front of this property would add little to the value of the property if he is cut off from other parts of the street. It is of course true that if the lot were on a street in a large city, where the street was many miles in length, the closing of the street at a great distance from the property might not affect the property to any extent; and there would be no remedy, because there would be no injury.
“But where the closing of the street, either by vacation or by obstruction by steam railroads, or in any other way, is near enough to the property to materially afféct its value, then the property owner has a right to be compensated before the street is so obstructed or closed, and he can prevent such closing or obstruction by injunction.”
And the second paragraph of the syllabus:
“Where a street, either by vacation, or by obstruction by steam railroads, or closing of the street in any other way, is cut off near enough to property abutting on such street to materially affect its value, then the property owner has a right to be compensated before the street is so obstructed or closed, and he can prevent such closing or obstruction by injunction. ’ ’
*430 It will be noted that the application of the rule, as I have read it from these cases, is stronger than its application in this case would be, because -the streets involved in those cases were not cul de sacs.
When this plaintiff bought its lands abutting upon Clark avenue, a cul detsac, it took with its purchase the right of access through this, street, by the only means of access through that street. This right accrued to all the abutting property, by the establishment of this highway, whether established by dedication, or by appropriation. Nothing short of this would preserve this incidental property right; for a closing of the street at .any point would destroy the easement as to any lot between the obstruction and the closed end of the street, as effectually as if the obstruction were in front of such lot.
The view I have expressed finds support in the case of Kinnear Mfg. Co. v. Beatty, 65 Ohio St., 264, and I read from the opinion on pages 284 and 285:
‘ ‘ In all the cases in this state, where an owner of land is recognized as having such a property interest in a road or street, as^ entitles him to an action for damages, or to restrain its obstruction, relate to the cases where there was a direct physical connection between the portion of the street interfered with .and the land of the complainant; or the part vacated furnished the only means of access to his property. In the latter case he is regarded as having an easement in the road or street, and its vacation or obstruction, affecting as it' does his private rights, the injury to him is regarded as different in kind from that of the public. McQuigg v. Cullins, 56 Ohio St., 649, supra, is an instance of this kind. Where closing up a portion destroys the owner’s easement in the part not closed, and deprives him of any access to his land, the result to him is the same as if the entire way had been closed; and, in such case, he may properly be said to have an easement to his lands in the entire way, though his lands are connected with, or abut only upon a part of it. The other cases relate to the instances where, a city having established a ■ grade, with reference to which the owner has improved his lot, subsequently changes it, making the access to the owner’s lot, as improved, less convenient (Crawford v. Delaware, 7 Ohio St., 459, supra), or, where as in Cincinnati & S. G. Ave. St. Ry. v. Cumminsville, 14 Ohio St., 523, it is proposed to add a new bur *431 den .to the street, making access to his propnerty by the abutting owner less convenient. In these and all similar instances, the .owner is regarded as having an interest in the street in the nature of property, that by the 'justice of the'constitution’ can not be taken from him .against his consent until compensation has been made. It is plain to be seen that the case of the plaintiff falls within the principle of none of these decisions. Her lot is not located upon the vacated portion; and access to it is hardly in any appreciable degree impaired, is, in fact, by the new alley, increased. ’ ’
The decision there was against the complainant, but I read it for the statement of the doctrine.
I conclude, .therefore, that this plaintiff has an easement appurtenant to its property in all that part of Clark avenue lying between its property and the first intersecting thoroughfare to the westward, as the only means of ingress and egress to and from its property.
This brings us to the inquiry, whether the proposed placing of five additional tracks across Clark avenue, at a point where the defendant now has two tracks across it, and the proposed use of the seven tracks, will be an appreciable impairment of this easement.
Without reviewing the evidence, it is clear therefrom that the proposed crossings, and the proposed use thereof, will be a material inconvenience to all persons using the avenue at that point. So far as the general public are concerned, they have consented thereto by the action of their authorized agency, the public authorities, having control of this avenue as a public highway.
It is the settled law of this state, that to authorize an abutting land owner to complain of obstruction of the highway^ he must suffer damage differing, not in degree but in kind, from that suffered by the general public.
If course, when this plaintiff uses this .avenue at the point of obstruction, it encounters just the same obstruction that anyone of the general public encounters. One of the general public encountering the obstruction can not complain, because he is using the avenue as a public highway, and only for the purpose of travel; and for the ‘further reason that his right to complain has *432 been foreclosed, by his own consent, through the action of the public authorities.
Anil so, this plaintiff uses the avenue as a public highway. But the plaintiff does more than this; it uses its private easement in the highway. "While the one is a mere traveler on the highway, the other is using the way as a highway and also as a private right appurtenant to its property; and it is using this way in the conduct of its private business, conducted upon its private property, that can be reached by no other way. So that, in "the one instance, the inconvenience and injury is to public travel, while in the other instance the inconvenience and injury is to the use of private property, in the conduct of private business.
These views of the case, reached after much consideration, lead me to the .conclusion that the proposed railway tracks across Clark avenue, and the proposed-use thereof, would do substantial injury to the property right of the plaintiff in that highway, and that the defendant should be restrained, until compensation shall have been made to the plaintiff. Decree accordingly.